## No. 7822.

SUCCESSION OF DOMINIQUE COCO. ON OPPOSITIONS TO THE TABLEAU OF THE ADMINISTRATORS.

| 32 | 325 |
| 47 | 1649 |
| 32 | 325 |
| 52 | 462 |

The claim of the heirs of the wife for restitution of her dowry is a debt of the succession of the husband; and it must be placed, as such, on the account of the administrators of his succession.

Payments made to the widow by the administrators of the succession of the husband, without imputation must be applied to the debt due her for restitution of her dowry, and not to her share of the proceeds of community property in their hands.

The mode of applying partial payments stated and explained.

Where the marriage contract fixes the shares of the spouses, respectively, in the community in proportion to the values brought by each into the marriage, the liability of the succession of the wife for the debts of the community must be in the same ratio, in the absence of a stipulation to the contrary.

One of the heirs who was a debtor of the succession for advances, having been adjudicated a bankrupt, the difference in his favor, if any, between his distributive share and his indebtedness to the succession, passed to the assignee, and not his distributive share.

The administrators will be liable for any loss that may result from their failure to comply with the order of the court, which required them to take notes with two sureties, for property of the succession sold by them.

Administrators are responsible for debts due the succession, no longer collectible, which they might have collected by proper diligence.

Where the husband, out of the means of the community, gave to each of his children a sum of money, and the wife, at the same time, gave to each of her children, by a former marriage, an equal sum which she received from her husband for that purpose, neither the wife nor her succession is liable to the succession of the husband for the sum so given to her children.

APPEAL from the Parish Court of Avoyelles. *Hall, J.*

Aristide Barbin and Thos. H. Lewis for administrators, appellants :

First—There is · clearly an absolute want of jurisdiction in the parish court to hear and adjudge such a *contestatio litis.* The succession of Melazie Ledoux is practically a party plaintiff, and the succession of Dominique Coco a party defendant. The judgment of the parish court, overruling the plea of prescription, and ordering the claim to be placed upon the tableau, has precisely the same legal effect as would be a decision by the district court, if the opponents had sought in that tribunal to obtain a judgment against the administrators by a direct action. One is as much the basis of *res adjudicata* as the other.

Had the Sheldon heirs brought an action before the district court praying judgment for the sum, it seems plain] that that tribunal could have taken jurisdiction of the case; and there being no such thing .as a concurrent jurisdiction between these two courts, the authority ·of the district court must be exclusive. It is, however, proper in :such cases to present an opposition before the parish court for the

purpose of notice, and to stay the homologation until the subject, matter can be litigated before the courts of competent jurisdiction ; such has been the practice. Con. arts. 85–87; succession of Bingay, 22; An. 101 ; Bynum, Adm'r vs. Bynum, Adm'r, 24 An. 126–453 ; Chopin vs. Forstall, 28 An. 303, 716 ; Flournoy vs. Flournoy, 29 An. 737.

Second—If the court is of opinion that the parish court properly exer-cised its jurisdiction over this claim, then the plea of ten years prescription is interposed by the administrators and several of the heirs of Dominique Coco. The action to enforce a payment of this claim is personal in its nature, and prescriptible by the lapse of ten years.  C. C. 3544.

Third—The measure of diligence required of an administrator is that of a prudent man in caring for his own estate.

A. B. Irion and E. J. Joffrion for defendant and appellee ;

First—Administrators are responsible for the amount of uncollected notes in their hands which they have negligently failed to collect ; and also for any loss resulting from a failure to obtain securities for a debt due the succession which it was their duty to obtain.

Second—A controversy arising out of the adjustment of matters which necessarily form a part of an administrator's account is one over which the parish court must have jurisdiction to pass upon those matters in order to be able to homologate the account. Any other interpretation, if carried out, would deprive the parish judge of all jurisdiction over successions above $500 in value.

The opinion of the court was delivered by

MARR, J.  Dominique Coco, a widower, and Mélazie Ledoux, a widow, were married in 1851. She brought into the marriage, and con-stituted as her dowry, property and effects valued at $18,739 51 ; and his property was valued at $92,708. One of the clauses of the marriage contract is as follows :

" Il existera une communauté de gains et d'acquêts entre les futurs époux, et la part ou portion des époux dans la dite communauté sera réglée et déterminée d'après la régle de société, en égard à l'apport de chacun, ainsi que cet apport est établi dans le présent contrat. Sauf cette modification la dite communauté existera selon les dispositions du Code Civil de cet état relativement à ce sujet."

In 1860 Coco gave $3000 to each one of his fourteen children ; and, at the same time, Mrs. Coco gave to each of her two daughters $3000, which she received from her husband for that purpose. That is, $48,000 of community funds were divided, *per capita*, among the sixteen, with-out distinction between her children and his.

On the 12th September, 1864, Dominique Coco died ; and two of his sons were appointed administrators of his succession. They distributed the cash on hand ; and, in 1867, they sold the separate property and the community property, on terms of credit, under order of the court, which required them to take the notes of the purchasers, with two good sureties ; and, in 1870, they divided a large sum of money, giving to each one of the full heirs $4000.

In 1875 Widow Coco died ; and in September, 1877, the administrators filed their first account, which was provisional. Subsequently a compromise was made between the administrators and some of their co-heirs, the result of which was the withdrawal of this account, and the substitution for it, on the same day, by consent, and by leave of court, of what they style an " account and partial settlement of the estate of Dominique Coco, deceased, and community interest of his surviving wife, Mélazie Ledoux, also since deceased."

It appears by this account that the administrators ignored the right of Mélazie Ledoux to restitution of her dowry. They charge themselves with $65,681 09, received for account of the community, of which they allow, as the widow's share, $\frac{2}{16}$ or $8210 13. They charge her with $11,-363 91, amount of her notes, and interest, given for community property and separate property purchased by her, and cash paid her at different times ; and they also charge her with $4068 73, half the community debts, leaving balance due by her $7222 51. It also appears that the purchaser of part of the real property of the community failed to comply with the terms, and it has not been sold ; that the administrators hold the notes of some of the heirs for $4570, for real property of the community purchased by them, and other notes for $1479 42, for movables of the community ; that there are debts to a large amount due the community, not collectible ; and that the administrators also hold the notes of some of the heirs, for a large amount, for separate property of their father, purchased by them, secured by mortgage.

Oppositions were filed by the heirs of Mélazie Ledoux, and by the heirs of Dominique Coco who were not parties to the compromise. The heirs of Mélazie Ledoux admit all the items, aggregating $11,363 91, as charged in the account, except one for $4457 77, purporting to have been paid to her, on the 10th September, 1867, by Adolphe D. Coco, one of the administrators. They allege that this sum was not paid to her ; and that her receipt for it was obtained " by undue and unfair representations."

They allege that she was not liable for half of the community debts, but for her part and portion, only, as fixed by the marriage contract.

That the administrators were bound to charge themselves with the whole amount of the notes due for community property, for the reasons

that the order of court required them to take the notes of the purchasers, with two good sureties, which they failed to do ; and that the distributive shares of the heirs, makers of the notes, exceed the amount of the notes ; that the distributive share of Adolphe D. Coco, a debtor of the community, exceeds the amount of his indebtedness ; and that the administrators are bound to charge themselves with the amount.

They also show that of the property brought into the marriage by Mélazie Ledoux, her dowry, there were slaves, valued at $6750, which were lost by emancipation ; and her garde-robe, valued at $800, not chargeable to the husband, leaving $11,189 51, due for her dotal rights, with interest from the 12th September, 1865, or one year after the death of Coco, which they insist should be allowed, and placed to her credit in the account.

The heirs of Dominique Coco claim that the succession of Mélazie Ledoux should be charged with the $6000, given to her daughters, in 1860 ; that the administrators are accountable for the debts not collected ; and that they are chargeable with the full amount of the notes for property of the succession, as so much cash for distribution.

The administrators excepted to the jurisdiction of the parish court to entertain the demand for restitution of the dowry ; they and their co-heirs plead prescription against that demand ; and they alleged that they were not liable for the debt due by Adolphe D. Coco, because, in 1868, he was adjudicated a bankrupt, and was finally discharged in 1869.

It was admitted on the trial that the debts reported as not collectible were properly so classed, except nine items, to which the oppositions were restricted.

The parish judge homologated the account with respect to the heirs, parties to the compromise, who had consented to and accepted it. He was of opinion that the administrators should be charged with the notes given for the community property and the separate property, and the amounts due by Adolphe D. Coco, Valery Ledoux, and E. Alexander ; and that they must bring into the account, for distribution, $568, cash in hand belonging to the community, omitted through error. He decided that Mélazie Ledoux was liable for half the community debts, and was entitled to $\frac{18.739}{110, .47}$ of the property and effects of the community ; that she was not liable for the $6000 received by her from her husband ; and that she was properly charged with the $4457 77 paid to her in 1867. He maintained jurisdiction with respect to the dowry ; overruled the plea of prescription ; and ordered the claim to be placed to her credit, with interest from the date at which it became exigible. He also decided that, in addition to the value of the dotal slaves and the garde-robe, there must be deducted from the dowry $2796 56, for deficiency in the property and effects mentioned in the marriage contract, and for debts

.and taxes due by the wife at the time of the marriage subsequently paid by the husband ; and he ordered the administrators to amend their account in accordance with these views.

The administrators and the heirs of Coco appealed ; and the heirs of Mélazie Ledoux in answer to the appeal, prayed that the judgment be so amended as to strike from the account the $4457 77 attacked in their opposition ; and to fix her proper share of liability for the debts of the community.

First. The plea to the jurisdiction is not well founded. It is manifestly impossible to settle the account of the administrators without determining the dotal rights of Mélazie Ledoux. Her heirs were cited by the administrators to show cause why the account, which exhausted her credits, and left a balance against her of $7222 51, should not be homologated. It was their right to show that the succession of Dominique Coco was indebted to Mélazie Ledoux for her dowry ; and that this debt had been improperly left out of the account, by the administrators, just as they had the right to show any other error in the account to their prejudice. We shall see, hereafter, that the greater part of the $11,-363 91 charged to Mélazie Ledoux in the account, was necessarily, and by law imputable to this debt, and extinguished it before her death.

Second. It was admitted on the trial that the community property and the separate property of Dominique Coco were sold by the administrators, in 1867, by order of court which required them to take the notes of the purchasers, with two good sureties ; and they did not comply with the order in this respect.

Of the notes for $1479 42, given for movables of the community, and not paid, about one third the amount is due by the heirs ; and some of the heirs are also indebted for movables of the separate estate. All the notes remaining unpaid, for real property of the community, amounting to $4570, were given by some of the heirs styling themselves "Coco Frères ;" and these same brothers were the purchasers of the greater part of the real property of the separate estate of Dominique Coco, for which they gave their notes for $40,550 ; on account of which they have paid only $14,597 86.

It is not difficult to understand why this succession has remained so long under administration.. It is, indeed, time that it should be closed ; and we shall endeavor to expedite the settlement. Nearly sixteen years have elapsed since the death of Dominique Coco, thirteen years since the property was sold, and four years since the death of the surviving widow. And yet part of the community property has not been disposed of, nor has it been put in condition to be partitioned ; and there are notes not collected, which must have been due for at least ten years, and which amount now, in capital and interest, to over $50,000.

It would be premature now to hold the administrators personally liable, absolutely, for all these notes ; but they must all be brought into the account, and distribution made as if they were paid.   The distribu-- tive shares of the several heirs, makers of some of the notes, must be applied to the payment.   It may be that their respective shares will be in excess of their indebtedness ; and, in that case, there will be no occasion to look to the administrators, personally, in their stead.   But some of the unpaid notes were made by strangers to the succession ; and the administrators must answer to their co-heirs, and to the heirs of Méla-- zie Ledoux for any loss or deficiency which may have occurred, or which may hereafter occur to them, by reason of the failure to take the notes of the purchasers, whether heirs or strangers, with two good sureties, as the order of the court required.   The administrators must make settlement and distribution of the entire community, so far as it is represented by money collected, and by notes which have matured ; and the separate estate of Dominique Coco must be settled and distributed in the same manner.

Third.   When Adolphe D. Coco went into bankruptcy he was bound to surrender, not any amount to which he might have been entitled as an heir or as a creditor, but his rights in and against the succession.   The debt in question, which was represented, originally, by his notes to his father, can be regarded in no other light than as an advancement to him, to be collated ; and nothing would have passed to the assignee except the difference in his favor, if any, between his rights and claims against the succession and his indebtedness to the succession.   If this indebtedness exceeds his rights and claims against the succession, it may be that the excess will be covered by the discharge in bankruptcy, but the discharge cannot otherwise, or to any greater extent, relieve him of his obligations to the succession.   This indebtedness must be brought into the account for settlement and distribution ; and his distributive share, and his fees and commissions as administrator, and any debt or demand he may have against the succession must be applied to the payment.

Fourth.   The proof satisfied the parish judge, and it satisfies us, that of the nine debts claimed as collectible, the greater part were really not collectible.   Our attention is specially called to the note of Martin Couvillier for $200.   The testimony of Ferdinand B. Coco, one of the administrators, is that " this claim was abandoned by agreement.   My father had sold him a tract of land, and it proved to be deficient in quantity.   Couvillier was threatening a suit to make the estate responsible for the deficiency.   He would have succeeded in the suit to the best of my knowledge and belief ; and according to the advice of the attorneys of the estate I agreed to surrender the $200 in settlement of the matter."

There is no testimony to contradict this ; and there is no reason to-doubt the entire good faith of the administrators in making this compromise.

We agree with the parish judge that the administrators must be-charged with the amounts due by Valery Ledoux and E. Alexander. No-effort was made to collect these debts ; and the proof shows that they-might have been collected by proper diligence. We observe that the-amount due by Valery Ledoux is stated by the parish judge to be $550.. According to the account of the administrators the amount is $615 52.: Whatever it may be, it must be carried into the account as cash for dis--tribution.

We think the parish judge erred in not charging the administrators; with $185 95 due by the convent. The proof is that this was for 'sugar and molasses furnished to the convent ; that the Superior objected to-the prices charged ; and that no effort was made to collect the debt by-suit. This must also be charged to the administrators, and distributed: as cash.

Fifth. By the terms of the marriage contract the part or portion of-the spouses, respectively, in the community, was to be determined and fixed by the law of partnership d'après la régle de société, in proportion to the values brought into the marriage by each. In the absence of an express stipulation to the contrary the liability of partners, *inter sese*,: for the debts of the partnership, would be in the same ratio as their-shares, respectively, in the profits. As Mélazie Ledoux brought into the- marriage $18,739, and the property of Coco was valued at $92,708, the- whole capital, or unity, would be composed of 111,447 parts. Her part-. of the profits would be expressed by the fraction $\frac{18,739}{111,447}$; and his part by $\frac{92,708}{111,447}$. The debts of the community being $8137 46, her part would be-$\frac{18,739}{111,447}$ of that sum, or $1368 25; and his part would be $\frac{92,708}{111,447}$, or $6769 21.. The parish judge erred in charging her with half the community debts,.. and in fixing her share in the community at $\frac{18,739}{110,447}$. Her share must be; fixed at $\frac{18,739}{111,447}$; and her part of the debts at $1368 25.

Sixth. We know of no principle which would make Mélazie Ledoux.: liable for the $6000 received by her from her husband, and given by her-to her daughters, one of whom was then the wife of Adolphe D. Coco.. No doubt this distribution was a family arrangement, consented to by-both parties. Coco disposed of $42,000, at the same time, in favor of; his children ; and he seems to have considered it an act of simple justice-; to his wife, as he was taking out of the community so large a sum,.for-gratuitous distribution among his children, to make similar and equal disposition in favor of the daughters of his wife. Nothing indicates the; intention, on the part of either of them that this money should be ac--

·counted for between the husband and the wife, or that it should be 'brought back into the community. If the $6000 are to be charged to ·her succession, the $42,000 must be charged to his succession, and the ·whole of the $48,000 must be brought back into the community for :settlement and distribution. If this should be done her part would be ·$8071, instead of the $6000 she received; and his succession would be :indebted to her succession in the sum of $2071, being the difference between the $42,000 disposed of by him, and the part to which he would have been entitled, under the marriage contract, as partner in community. Neither Mélazie Ledoux, nor her heirs, who alone could pre-tend to have been prejudiced by this disposition, have made any complaint; and the parish judge properly rejected this claim by the heirs ·of Dominique Coco.

Seventh. There is no proof in the record tending to show that the receipt of Mélazie Ledoux, for $4457 77, was obtained by undue or unfair representations. Her signature was admitted; and it was witnessed ·by her brother Valery Ledoux. He testified that he did not see any money paid to her, and that none was paid at the time of giving the re-ceipt. But this does not prove that the money was not paid at some other time, out of the presence, and without the knowledge of Ledoux. It was a transaction between one of the administrators, Adolphe D. 'Coco, and his mother-in-law; and they both might have preferred to ·have her brother witness her signature without acquainting him with .the particulars.

The receipt was not absolutely conclusive. It might have been impeached, or explained; but it is *prima facie* evidence that the money ¯was paid, as acknowledged. In the absence of proof to the contrary it ¯is conclusive; and the parish judge properly rejected the opposition to :this item.

Eighth. By the stipulations of the marriage contract, and the terms ·of the Civil Code, article 2368, specially referred to in the contract, the ¯restitution of the dowry could not have been enforced until one year ..after the dissolution of the marriage, which occurred, by the death of Dominique Coco, on the 12th September, 1864. Deducting from the dowry, $18,739 51, the value of the dotal slaves, the garde-robe, and ¯the $2796 56 for deficiency and for debts paid by the husband, as shown ¯by the testimony, there remained, at the death of Dominique Coco, .-$8392 95, for which his succession was accountable to his surviving ¯widow, in restitution of her dowry. This balance was a debt due by his :succession, not exigible until 12th September, 1865, but nevertheless a ·debt, secured by mortgage on all his immovables, and privilege on his movables.

There is no pretense that the administrators, or the succession,

owed Mélazie Ledoux any debt except for restitution of her dowry. They were, indeed, answerable to her for her share in the community, converted by them into money and notes; but this liability was not a debt in the ordinary sense. Her interest in the community was pro-prietary; as survivor she was the owner of her part or portion of the community property or proceeds. The payments charged to her in the account, aggregating $11,363 91, or so much as may be necessary for that purpose, must be imputed to the debt owing to her by the succes-sion, a burdensome debt, a debt bearing interest, and secured by legal mortgage and privilege; and they could not have been treated as ad-vancements to her on account of her community rights, which were un-liquidated, without her consent, or, at least, without such imputation having been expressly made by the administrators at the time the pay-ments were made.

These payments, where the dates are given in the account, are as follows: 14th November, 1864, $300; 27th January, 1866, $60; 19th August, 1866, $50; 10th September, 1867, $4457 77; 6th November, 1867, $50; 13th July, 1870, $732; 15th February, 1873, $100. The other payments, amounting to $5614 14, are without date; but as they consist, except a small item of $50 72, of her notes and interest given for property of the community and separate property of Coco purchased by her, it is fair to assume that they were charged to her as cash at the time of the large distribution, 13th July, 1870. From the amount of interest charged on these notes, it would seem that they must have been settled about that time.

A payment made before the maturity of a debt must be imputed to the principal, where no interest has accrued. The administrators were not compelled to make any payment on account of the dowry before the 12th September, 1865; but they were at liberty to pay at any time when they had means. The $300 charged on the 14th November, 1864, must be imputed to the $8392 95, remainder of the dowry at the death of Coco, leaving balance $8092 95, bearing interest at five per cent from the 12th September, 1865.

The rule governing partial payments, as sanctioned by numerous decisions of this court, may be thus stated: Where the payment ex-ceeds or is equal to the accrued interest, it is imputed to be the aggregate of principal and interest, due at the time it is made; and the balance becomes a new principal, bearing interest from the date of such pay-ment; and so, with each successive payment that equals or exceeds the interest due. Where the payment is less than the accrued interest, no rest is made until there is a payment which suffices to discharge the in-terest that has accrued. In such cases the interest is calculated up to the date of the payment which equals or exceeds the accrued interest;

and all the payments up to that date are deducted from the amount of principal and interest due. The balance becomes a new principal, bearing interest from the date of the last payment; and so with the successive payments. Hynson vs. Maddens, 1 N. S. 572; Union Bank vs. Lobdell, 10 An. 130; Bird vs. Lobdell, 10 An. 159; R. C. C. article 2164.

It is obvious, in this case, that the payments of 27th January and 19th August, 1866, were not equal to the interest. Interest must, therefore, be computed from the 12th September, 1865, to the 10th September, 1867, on the balance of the dowry, $8092 95; and from the amount of principal and interest then due, the three payments of 27th January, 19th August, 1866, and 10th September, 1867, aggregating $4567 77, must be deducted. Interest will be computed on the balance, from the 10th September to the 6th November, 1867, when a payment of $50, exceeding the interest then due, was made; and so, with each subsequent payment until the debt is extinguished.

On the hypothesis that the other items charged to Mélazie Ledoux in the account, amounting to $5614 14, are to be imputed on the 13th July, 1870, the entire debt for restitution of the dowry would be extinguished at that date, and there would be a balance of some $1550, or, including the $100, charged under date 15th February, 1873, a total of, say, $1650, to be added to her part of the debts of the community, fixed at $1368 25, and to be deducted from her part and portion in the community. These figures depend upon the dates of the several payments, which the account does not show; and we have made the foregoing statement merely to show the manner in which the account must be stated, and the principles upon which the several payments, or items charged to the debit of Mélazie Ledoux in the account, must be imputed and applied.

The judgment of the parish court, in so far as it is in conformity with the views herein expressed is affirmed; and it is annulled and reversed, in so far as it conflicts with this opinion and decree; and it is now ordered, adjudged, and decreed that the administrators of the succession of Dominique Coco, Ferdinand B. Coco and Adolphe D. Coco, within thirty days after the filing of a copy of this opinion and decree in the clerk's office of the proper court, in the parish of Avoyelles, make and file an amended account or tableau of distribution, in conformity with the views herein expressed; that this cause be remanded for further proceedings according to law, and to the principles laid down and stated in this opinion, and that the costs of this appeal be paid by the succession of Dominique Coco.